IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT,<br><br>  Plaintiff,<br><br>v.<br><br>SLACKER, INC; LIVEONE, INC; and DOES 1-10,<br><br>  Defendants. | Civil Action No. 1:25-cv-04824<br><br>Hon. |

Plaintiff Sony Music Entertainment ("Sony Music"), by and through its attorneys, for its Complaint against Defendants Slacker, Inc. ("Slacker"), LiveOne, Inc. ("LiveOne"), and Does 1-10 (the "Doe Defendants," and together with Slacker and LiveOne, "Defendants") alleges as follows:

## NATURE OF THE ACTION

1. This is a breach of contract action against Slacker and LiveOne for Slacker's failure to pay to Sony Music millions of dollars in contractual licensing fees that Slacker agreed to pay for the use of Sony Music's copyrighted content in Slacker's commercial digital streaming service, and for LiveOne's failure to pay to Sony Music the substantial portion of Slacker's outstanding balance that LiveOne guaranteed.

2. This is also a copyright infringement action against Defendants for their willful infringement of Sony Music's copyrighted sound recordings in connection with Slacker's digital streaming service.

3. Sony Music and its recording artists have been at the forefront of recorded music for over a century. Sony Music produces, manufactures, distributes, sells, and licenses some of the most iconic and popular sound recordings by some of the most important recording artists of

all time. Through its enormous investments of money, time, and creative efforts, Sony Music and its recording artists have developed, marketed, and distributed some of the world's most famous and popular music both in the United States and internationally.

4. Sony Music invests substantial time and effort to ensure the widespread, authorized availability and enjoyment of its recorded music, including by licensing its sound recordings for use by others. When companies exploit Sony Music's sound recordings for commercial benefit without authorization, neither Sony Music nor its artists see a dime. Not only does this harm Sony Music and the artists by depriving them of compensation, but it harms the public at large by reducing the incentive to invest in the creation and dissemination of new music. Furthermore, exploiting Sony Music's sound recordings without authorization allows companies like Slacker to unfairly compete with legitimate services that *do* pay content owners.

5. Slacker and LiveOne operate a website and application, available at the liveone.com domain and on iOS and Android, respectively (collectively, the "LiveOne App"). Among other features, the LiveOne App—denominated "LiveOne Powered by Slacker Radio"—allows users to search for sound recordings, including sound recordings owned or controlled by Sony Music, in LiveOne's music library; those sound recordings are then reproduced, distributed, and publicly performed to the LiveOne App's users.

6. Slacker and LiveOne are sophisticated parties that purport to take intellectual property rights seriously, at least when it benefits them. In fact, before users may access the LiveOne App and its content, they must first agree to the LiveOne Terms of Service ("Terms"). The Terms broadly define Defendants' intellectual property and commands "users to respect [their] copyrights, trademarks, and other intellectual property." They continue by stating that Defendants shall "aggressively enforce the same to the fullest extent of the law, including

seeking criminal prosecution." To use the LiveOne App, users must agree that they will not "infringe upon, misappropriate or violate any intellectual property . . . of any party or entity." Although Defendants preach these values, they have repeatedly shown no such regard for the property rights of Sony Music's intellectual property.

7. Recognizing the need for authorization to use Sony Music's sound recordings and the value of Sony Music's catalog, Slacker entered into a content distribution agreement with Sony Music effective March 9, 2007 (inclusive of all subsequent amendments, the "Agreement"). Under the Agreement, Sony Music authorized Slacker to reproduce, distribute, and publicly perform Sony Music sound recordings (the "Sony Music Content") through Slacker's digital streaming service, Slacker agreed to pay Sony Music specified license fees (among other consideration), and LiveOne guaranteed, in part, Slacker's payment of such license fees.

8. In the past several months alone, Slacker claims to have seen increasing commercial success, touting a surge in usage of the LiveOne App and a year-over-year surge in content views. Despite this self-proclaimed growth, Slacker—true to its name—has failed to make license payments to Sony Music as and when required under the Agreement, and its parent, LiveOne, has likewise failed to live up to its guarantee.

9. Starting in August 2024, Slacker failed to make the monthly payments required under the Agreement, totaling millions of dollars. Failure to pay these fees is a breach of the Agreement. Despite thereafter making intermittent payments in random amounts, each of which was less than the amount owed, Slacker has maintained a substantial outstanding balance since August 2024. After months of Sony Music demanding that Slacker pay its outstanding and overdue fees, Sony Music notified Slacker on March 12, 2025, that Slacker was in material

breach of the Agreement and that Sony Music would therefore terminate the Agreement effective March 15, 2025. In doing so, Sony Music expressly informed Slacker that its continued use of Sony Music Content after termination of the Agreement would constitute willful copyright infringement.

10. After Sony Music terminated the Agreement on March 15, 2025, Slacker had no legal rights to use Sony Music Content on the LiveOne App. Nevertheless, Slacker has continued to reproduce, distribute, publicly perform and otherwise exploit the valuable Sony Music Content in connection with the LiveOne App.

11. Slacker's conduct has caused and continues to cause substantial and irreparable harm to Sony Music and its artists, while enriching Defendants at the expense of Sony Music and its artists. By this lawsuit, Sony Music seeks damages for Slacker and LiveOne's breach of the Agreement and for Defendants' willful infringement of Sony Music's copyrights since the March 15, 2025, termination of the Agreement; and an injunction to stop Defendants' willful and deliberate campaign of infringement of Sony Music's and its artists' valuable sound recordings.

## THE PARTIES

### Plaintiffs

12. Sony Music is a Delaware general partnership. Sony Music's headquarters and principal place of business is located at 25 Madison Ave, New York, NY 10010.

### Defendants

13. Slacker is a Delaware corporation with its principal place of business at 16935 W. Bernardo Dr., Suite 270, San Diego, CA, 92127.

14. LiveOne is a Delaware corporation with its principal place of business at 269 S. Beverly Dr., Suite 1450, Beverly Hills, CA 90212. On information and belief, LiveOne is the parent of Slacker.

15. Sony Music is informed and believes, and on that basis alleges, that each of the Doe Defendants personally directs and participates in, and receives a financial benefit from, the conduct alleged herein, or is otherwise responsible for and proximately caused the harm and damages alleged herein. Sony Music is unaware of the true names and capacities of the Doe Defendants, and for that reason, sues such Defendants by such fictitious names.

## JURISDICTION AND VENUE

16. This is a civil action seeking damages and injunctive relief for copyright infringement under the U.S. Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and for breach of contract under New York law.

17. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, *et seq.*, and 28 U.S.C. §§ 1331 and 1338 based on federal question jurisdiction, and 28 U.S.C. § 1367, based on the Court's supplemental jurisdiction.

18. This Court has personal jurisdiction over Defendants pursuant to § 302 of New York's Civil Practice Law & Rules because, among other things: (a) Defendants transact business in New York, including providing the LiveOne App to individuals in New York; (b) Defendants have committed tortious acts within New York, including reproducing, distributing, and publicly performing Sony Music sound recordings to individuals in New York; (c) Slacker and LiveOne's breach of the Agreement and Defendants' ongoing infringement of Sony Music's copyrighted works causes injury to, and is directed at Sony Music, which is domiciled in the state of New York; and (d) in the Agreement, Slacker and LiveOne consented to exclusive

jurisdiction of Courts in New York County, New York for any controversies regarding those agreements. *See also* N.Y. Gen. Obilg. Law § 501492 (McKinney 2023)

19. Venue is proper in this district under 28 U.S.C. §§ 1391. Venue is also proper in this district because, in the Agreement, Slacker and LiveOne agreed that any action concerning the Agreement shall be brought in New York County courts and waived any objection to venue in courts in New York County, New York.

## FACTUAL BACKGROUND

### Sony Music's Sound Recordings and Licensing Business

23. Sony Music is home to some of the world's most distinguished record labels, including Columbia Records, RCA Records, Sony Nashville, Arista Records, and Epic Records, through which it contracts with its world-class artists. Columbia Records and RCA Records are among the world's first record labels, dating back to the late 1800s and early 1900s, respectively.

24. Sony Music's roster includes some of the world's most famous artists, spanning over decades. In addition to well-known artists, Sony Music invests heavily in signing and developing new artists, and in marketing and promoting their recordings.

25. Sony Music is, and at all times relevant to this proceeding was, the sole owner or exclusive licensee of all right, title, and interest in and to the copyrights in the sound recordings at issue.

26. The copyrights in the sound recordings at issue are valid and are registered, or filed pursuant to 17 U.S.C. § 1401, with the United States Copyright Office.

27. Sony Music commercializes its sound recording copyrights through physical sales, digital distribution, and through licensing to third parties, among other ways.

28. Licensing the use of sound recordings—including for use in internet-based and app-based media—is a substantial revenue driver for all music companies, including Sony Music, particularly over the last decade.

29. For example, Sony Music regularly licenses its sound recordings for use by streaming companies, such as Spotify and Apple Music, and social media platforms, such as TikTok, Instagram, Facebook, and YouTube.

30. Those who use or facilitate others' use of Sony Music's sound recordings, including in connection with streaming services, are obligated to follow copyright laws and ensure such use is authorized.

## Background and Function of the LiveOne App

31. Slacker and LiveOne operate the LiveOne App, a music streaming service that traces its origins to a service first offered by Slacker under the name "Slacker Radio" in or around 2006.

32. The LiveOne App allows users to listen to sound recordings in LiveOne's music library (the "LiveOne Audio Library"). The LiveOne Audio Library is created from copies of copyrighted sound recordings obtained from Sony Music and other content owners, and is frequently updated with newly-released material. All Sony Music Content in the LiveOne Audio Library was delivered to Slacker and LiveOne by or on behalf of Sony Music, and Defendants are aware that Sony Music owns or otherwise controls the copyright rights to each such sound recording.

33. The LiveOne App is available in three membership tiers:

   a. The "Basic Membership" allows use of the LiveOne App in a manner similar to listening to certain internet radio platforms, like Pandora. Users cannot request

7

  particular sound recordings on demand, but can search for particular artists, in response to which the LiveOne App will generally play randomly-selected recordings of that artist and other artists in the same or a similar genre. Users have limited ability to "skip" recordings that they do not wish to hear. The Basic Membership is free to the user, but includes frequent advertisements.

 b. The "Plus Membership" is similar to the "Basic Membership," but there are no advertisements and users are permitted "unlimited skips," meaning that users can skip past sound recordings they do not wish to hear (though they still cannot request *particular* sound recordings on demand). Slacker and LiveOne currently charge $3.99 per month for the Plus Membership.

 c. The "Premium Membership" is a fully "on demand" music streaming service. Users can request and play on demand any sound recording contained in the LiveOne Audio Library. There are no advertisements and sound recordings can be temporarily stored on a user's device to be played when the user is offline. Slacker and LiveOne currently charge $10.99 per month for the Premium Membership.

  34. The LiveOne App generates revenue for Defendants in multiple ways, including advertising revenue and subscription fees. Defendants know that this revenue depends on the availability of Sony Music Content. Sony Music's catalogue, which consists of some the most popular music in the LiveOne music library, keeps Basic Membership users on the LiveOne App for longer, allowing the LiveOne App to serve that user with more ads and, on information and belief, allows Defendants to charge higher advertising fees. And access to the vast array of

popular music included in Sony Music's catalogue incentivizes users of the app to pay for a Plus Membership or Premium Membership, further generating revenue for Defendants.

35. LiveOne has achieved substantial operational and financial success, attributable in large part to its access to Sony Music Content. In announcing its preliminary fiscal 2025 results in April 2025, LiveOne touted audio revenue in excess of $100 million dollars and achieving a new milestone of over 1.5 million total subscribers.

## The Licensing Agreement

36. Sony Music and Slacker first entered into the Agreement effective March 9, 2007; it was thereafter amended sixteen times. The Fifteenth Amendment, dated April 30, 2022, included both a "Summary of Terms" as Appendix 1 and a detailed "Digital Distribution Agreement" as Appendix 3. The Fifteenth Amendment specified the grant of rights from Sony Music to Slacker with respect to Sony Music Content; it also specified the various fees that Slacker was required to pay to Sony Music (the "Service Fees and Advances") and the times at which such payments were due. Pursuant to the Fifteenth Amendment, the term of the Agreement expired on April 30, 2023.

37. The Sixteenth Amendment, dated April 30, 2023, extended the term of the Agreement by one year, until April 30, 2024. The Sixteenth Amendment again specified the Service Fees and Advances that Slacker was obligated to pay Sony Music in exchange for its use of Sony Music's sound recordings and the time for such payments. Slacker also agreed to pay interest at the rate of one and one-half percent (1.5%) per month on any required payment that was not made by its due date.

38. In addition, in the Sixteenth Amendment, LiveOne "guarantee[d], absolutely and unconditionally, the full payment of all Service Fees and Advances," up to a total amount of

$250,000. The Sixteenth Amendment further provided that LiveOne's obligation under its guarantee "shall be direct and immediate," "shall not be conditioned upon the pursuit by [Sony Music] of any remedy [Sony Music] may have against [Slacker]," and "shall not be revocable at any time or for any reason."

39. From and after April 30, 2024, while the parties negotiated the terms of the Seventeenth Amendment to the Agreement, the parties extended the Agreement at will on the same terms reflected in the Sixteenth Amendment (including without limitation as to LiveOne's guarantee of Slacker's payment obligations), with payments due according to the same cadence as the Sixteenth Amendment (*i.e.*, with Service Fees for each month due at the end of the following month, such that, for example, Service Fees owed for the month of May 2024 were payable by the end of June 2024).

40. Slacker initially paid Sony as required pursuant to the at-will extension of the Agreement. However, in August 2024, Slacker failed to make the payment it then owed to Sony Music pursuant to the Agreement. Since that time, Slacker has continually been in breach of the Agreement, as it failed to make the payments required by the Agreement as and when due in each of the next seven months. Although Slacker made intermittent payments in random amounts at various times since August 2024 (each of which was less than the amount then owed), Slacker currently owes Sony Music a balance of $2,636,198.35 (inclusive of interest at the contractual rate).

41. In addition, although LiveOne's liability on its guarantee to Sony Music was "direct and immediate" upon Slacker's breach, LiveOne has failed to pay the $250,000 that it owes to Sony Music pursuant to that guarantee.

42. On March 12, 2025, Sony Music sent Defendants a "Notice of Termination of Agreement," notifying Slacker that it was in material breach of the Agreement and that Sony Music therefore terminated the Agreement effective March 15, 2025.

43. Despite the termination of the Agreement and Sony Music's notice to Defendants of such termination, Defendants have continued to use and exploit the Sony Music Content through the LiveOne App without authorization since March 15, 2025. For purposes of this Complaint, Sony Music has identified a sample of 202 Sony Music sound recordings that were available in the LiveOne Audio Library after the termination of the Agreement on March 15, 2025, and has confirmed that Defendants reproduced, distributed, and/or publicly performed these sound recordings in the months after the termination of the Agreement on March 15, 2025. The sound recordings identified by Sony Music in this paragraph are listed in Exhibit A (the "Recordings"). This list is illustrative and non-exhaustive; on information and belief, from and after March 15, 2025, Defendants have continued to unlawfully use and exploit substantial volumes of Sony Music Content that Sony Music delivered to Slacker pursuant to the Agreement.

44. On March 19, 2025, Sony Music demanded in writing that Defendants cease and desist all unauthorized use and exploitation of Sony Music Content and that they return, destroy, or remove from the LiveOne App all Sony Music Content. Defendants have ignored this demand and have instead continued to use and exploit Sony Music Content on and in connection with the LiveOne App. Indeed, although Slacker has claimed that it has taken down "millions of [Sony Music] tracks" since receiving Sony Music's demand, *none* of the Recordings—which include some of Sony Music's most current and popular sound recordings—had been removed from the LiveOne Audio Library as of the day prior to the filing of this complaint; on the contrary, all of

the Recordings (and countless other Sony Music recordings) remained available through the LiveOne App as of the day prior to the filing of this complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Breach of Contract Against Slacker

45. Sony Music repeats and realleges paragraphs 1-44 above as if fully set forth herein.

46. Sony Music and Slacker entered into the Agreement as described above.

47. Slacker has failed, without justification, to make Service Fees and Advances as required by the Agreement since August 31, 2024, which failure constitutes a breach of the Agreement. Slacker has also failed, without justification, to return or destroy or remove the Sony Music Content that is in its possession, custody, or control, which failure constitutes a further breach of the Agreement.

48. Sony Music has adequately and substantially performed all of its obligations under the Agreement.

49. As a direct and proximate result of Slacker's breaches of the Agreement, Sony Music has been damaged in an amount to be proven at trial, at least in the sum of all amounts owed under the Agreement, and in excess of the minimum jurisdiction of the Court.

### SECOND CAUSE OF ACTION
### Breach of Contract (Guarantee) Against LiveOne

50. Sony Music repeats and realleges paragraphs 1-49 above as if fully set forth herein.

51. Pursuant to the Agreement, LiveOne agreed to guarantee Slacker's payment of Service Fees and Advances due to Sony Music, up to a total amount of $250,000. Since at least

August 31, 2024, Slacker has failed to pay Service Fees and Advances substantially in excess of $250,000, such that LiveOne is obligated to pay the full amount of its guarantee to Sony Music.

52. LiveOne has failed, without justification, to pay any or all of the amount of its guarantee to Sony Music, which constitutes a breach of LiveOne's obligations under the Agreement.

53. Sony Music has adequately and substantially performed all of its obligations under the Agreement.

54. As a direct and proximate result of LiveOne's breach of the Agreement, Sony Music has been damaged in the amount of $250,000.

**THIRD CAUSE OF ACTION**
**Direct Copyright Infringement Against Slacker, LiveOne, and Does 1-10**
**(17 U.S.C. § 101 *et seq.*)**

55. Sony Music repeats and realleges paragraphs 1-54 above as if fully set forth herein.

56. Sony Music owns and/or is the exclusive licensee in the United States of rights under copyright of the Recordings identified in Exhibit A, which listing is illustrative and non-exhaustive; Sony Music will supplement this listing as discovery progresses. All of the Recordings have been registered with the U.S. Copyright office.

57. The use and exploitation of Sony Music Content, including without limitation the Recordings, through the LiveOne App from and after March 16, 2025 constitutes copyright infringement. Among other things, Defendants have unlawfully reproduced, distributed, and/or publicly performed the Recordings without authorization, in violation of 17 U.S.C. §§ 106 and 501.

58. On information and belief, the operation of the LiveOne App is controlled by both Slacker and LiveOne. Defendants describe the LiveOne App as "LiveOne Powered by Slacker,"

and LiveOne has guaranteed, in part, Slacker's financial obligations under the Agreement. On information and belief, each of the Doe Defendants controls the operations and decisions of either or both Slacker and LiveOne and has knowingly and personally participated in the infringement described herein.

59. Defendants' acts of infringement are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Sony Music.

60. As a direct and proximate result of the infringements by Defendants, Sony Music is entitled to damages and to Defendants' profits in amounts to be proven at trial. Alternatively, Sony Music is entitled to statutory damages of up to $150,000 for each work infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

61. Further, Sony Music is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

62. As a result of Defendants' conduct, Sony Music has sustained and continues to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Defendants acknowledged as much in the Agreement, and further agreed that in the event of a breach, Sony "shall…be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond)."

63. Unless enjoined and restrained by this Court, Defendants will continue to infringe Sony Music's rights in the Sony Music Content. Sony Music is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**FOURTH CAUSE OF ACTION**
**Contributory Copyright Infringement Against LiveOne and Does 1-10**
**(17 U.S.C. § 101 *et seq.*)**

64. Sony Music repeats and realleges paragraphs 1-63 above as if fully set forth herein.

65. To the extent LiveOne and/or the Doe Defendants are not directly liable for copyright infringement as set forth above, then in the alternative, LiveOne and the Doe Defendants are secondarily liable for contributory infringement. On information and belief, LiveOne and the Doe Defendants had knowledge of the infringing activities of Slacker, and knowingly contributed, induced and/or encouraged Slacker's infringing activities, including without limitation by providing the means, resources, and/or support necessary for Slacker to carry out the infringement.

66. As a direct and proximate result of the contributory infringement by LiveOne and the Doe Defendants, Sony Music is entitled to damages and to LiveOne's and Doe Defendants' profits in amounts to be proven at trial. Alternatively, Sony Music is entitled to statutory damages of up to $150,000 for each work infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

67. Further, Sony Music is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**FIFTH CAUSE OF ACTION**
**Vicarious Copyright Infringement Against LiveOne and Does 1-10**
**(17 U.S.C. § 101 *et seq.*)**

68. Sony Music repeats and realleges paragraphs 1-67 above as if fully set forth herein.

69. To the extent LiveOne and/or the Doe Defendants are not directly liable for copyright infringement as set forth above, then in the alternative, LiveOne and the Doe Defendants are secondarily liable for vicarious infringement. On information and belief, LiveOne and the Doe Defendants had the right to supervise the infringing activities, have a direct financial interest in these activities, and profited from Slacker's infringement and either failed to or refused to exercise their right to stop it.

70. As a direct and proximate result of the vicarious infringement by LiveOne and the Doe Defendants, Sony Music is entitled to damages and to LiveOne's and the Doe Defendants' profits in amounts to be proven at trial. Alternatively, Sony Music is entitled to statutory damages of up to $150,000 for each work infringed, or in such other amounts as may be proper under 17 U.S.C. § 504(c).

71. Further, Sony Music is entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

**PRAYER FOR RELIEF**

WHEREFORE, Sony Music requests a judgment in its favor and against Defendants as follows:

(1) For a declaration that Defendants breached the Agreement;

(2) For compensatory damages for Slacker's breach of the Agreement in an amount to be proven at trial, including payment of all fees, interest, and late fees due;

(3) For compensatory damages for LiveOne's breach of the guarantee in the Agreement in the amount of $250,000 plus interest;

(4) For a declaration that Defendants willfully infringed Sony Music's copyrighted sound recordings;

(5)  For an order enjoining Defendants from further infringing Sony Music's copyrights, pursuant to 17 U.S.C. § 502;

(6)  For an order pursuant to 17 U.S.C. § 503, requiring Defendants to immediately destroy, delete or return all Sony Music Content;

(7)  For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Defendants' willful violations of Sony Music's rights under the Copyright Act; or, in the alternative, at Sony Music's election, Sony Music's actual damages pursuant and Defendants' profits from infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

(8)  For an award of Sony Music's costs in this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

(9)  For an award of pre-judgment and post-judgment interest, to the fullest extent available, on any monetary award made part of the judgment against Defendants; and

(10) For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Sony Music hereby demands a jury trial on all issues so triable in this action.

Dated: June 6, 2025

Sidley Austin LLP

By: /s/ *Tyler J. Domino*
Rollin A. Ransom (pro hac vice forthcoming)
Maxwell B. Gordon (pro hac vice forthcoming)
SIDLEY AUSTIN LLP
350 South Grand Street
Los Angeles, CA 60603
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rransom@sidley.com
Email: max.gordon@sidley.com

Tyler J. Domino
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: tdomino@sidley.com

Counsel for Plaintiff Sony Music Entertainment