PIERSON FERDINAND

**Scott Michael Lupiani**
PARTNER

Office: 1270 Avenue of the Americas
7th Floor—1050
New York, NY 10020
Direct: 716.818.7328
Email: scott.lupiani@pierferd.com

**MEMORANDUM ENDORSED**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/28/2026

August 24, 2026

**VIA ECF**
Hon. Lewis A. Kaplan
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

**Re:** ***Sony Music Entertainment v. Slacker, Inc., et al.; Case No. 25-cv-04824 (LAK)***

Dear Judge Kaplan:

Defendants respectfully move for an order (1) compelling Plaintiff Sony Music Entertainment ("Sony") to produce a properly prepared Rule 30(b)(6) witness on Topics 26 and 27, and (2) imposing Rule 37 sanctions for Sony's noncompliance with the Court's July 2, 2026 Order (ECF No. 105) ("July 2 Order"). Sony redesignated the same inadequately prepared witness—Daniel Blumberg—failed to consult previously identified employees with knowledge of the 2007–2018 period, and Sony's counsel instructed the witness not to answer questions within Topics 26 and 27.

## I. The Court's July 2, 2026 Order

On June 18, 2026, Sony produced Daniel Blumberg as its sole Rule 30(b)(6) designee on Topics 26 and 27. Topic 26 addresses Sony's "complete course of dealing with Slacker and LiveOne from March 9, 2007, to the present" (including subpart (e): "Your treatment of other digital streaming service licensees upon termination"); Topic 27 addresses representations and conduct concerning waiver and estoppel. On June 28, 2026, Defendants moved to compel additional testimony (ECF No. 101) ("First Motion to Compel"), demonstrating Blumberg was inadequately prepared: he joined Sony in October 2018, had no personal knowledge of the prior eleven-year relationship, prepared with only three individuals, and could not provide complete testimony on key topics. (*Id.* at 1–2.) The First Motion identified individuals with direct knowledge—including, but not limited to, Jeff Walker, Mark Piibe, Dennis Kooker, and Neil Carfora—whom Sony had not disclosed and Blumberg had not consulted. (*Id.*) On July 2, 2026, the Court granted Defendants' motion in part, ordering Sony to "prepare a witness to testify under Rule 30(b)(6) regarding its complete (or substantially all of its) course of dealing with Slacker and LiveOne from March 9, 2007, to the present, as described by topics 26 and 27." (July 2 Order.) On July 29, 2026, Sony redesignated Daniel Blumberg as its sole designee. (Tr. (7/29) 292:16–20; 293:4–11.)[1]

---

[1] Blumberg deposition transcript ("Tr.") excerpts are attached as **Exhibit A** (6/18/26) and **Exhibit B** (7/29/26)..

**II. Sony's Continued Failure to Produce a Properly Prepared Witness**

A Rule 30(b)(6) designee must testify on matters "known or reasonably available to the organization," Fed. R. Civ. P. 30(b)(6), which imposes an affirmative duty to consult employees, former employees, and documents. *See Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999); *Sec. & Exch. Comm'n v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992) (deponent "must make a conscientious good-faith endeavor" to designate and prepare persons to "answer fully, completely, [and] unevasively"). Sony failed to discharge this duty.

***Minimal Preparation and Key Witnesses Not Consulted.*** Blumberg spent only "ten to fifteen" hours preparing for this Court-ordered deposition. (Tr. (7/29) 297:2-4.) He did *not* meet with Andre Stapleton—the business-development person covering 2007–2012, a critical period spanning nearly half the parties' relationship. (Tr. (7/29) 298:7–12.) Stapleton was a primary contact for the Slacker account with direct knowledge of Sony's communications, payment practices, and forbearance decisions. Blumberg also failed to consult Melissa Cole, Dennis Kooker, Neil Carfora, Amber Smith, Jocelyn Doman, Keith Garrick, or Rob Stringer—all with potential course-of-dealing knowledge. (Tr. (7/29) 303:2–22.) He confirmed he did not speak to everyone who made decisions regarding the Slacker account between 2007 and 2018. (Tr. (7/29) 344:17–345:2.)

***Admitted Gaps.*** Blumberg admitted he could not identify every Sony employee who communicated with Slacker/LiveOne about payments, waivers, forbearance, or cure periods. (Tr. (7/29) 299:21–300:1.) Asked whether Sony identified "every current or former Sony employee who had course-of-dealing contact with Slacker or LiveOne from March 2007 to the present," he answered only that Sony "made a reasonable effort." (Tr. (7/29) 298:16–25.) But a "reasonable effort" that fails to consult the very individuals Sony identified—Andre Stapleton, Melissa Cole, Dennis Kooker, Neil Carfora, and Amber Smith—is no reasonable effort at all.

***Failure to Document Late Payment Instances.*** Asked how many times Slacker made late payments between 2007 and December 2018, Blumberg answered only "Dozens" and admitted he had not documented those instances in preparation. (Tr. (7/29) 310:25–311:4.) He could not identify specific payment ledgers, correspondence, or documents underlying his testimony. (Tr. (7/29) 311:2–8.) A designee who cannot cite any records supporting testimony on a central topic has not been adequately prepared.

***Failure to Consult Decision-Makers on Payment Forbearance.*** Asked why Sony repeatedly declined to terminate for late payment between 2007 and 2018, Blumberg testified those decisions would have been made by "the business development person and the business and legal affairs person who were responsible for that account, in discussion with their supervisors." (Tr. (7/29) 321:5–9.) Yet he admitted he did not speak to all those individuals. (Tr. (7/29) 321:10–13.) He specifically confirmed he did not speak to Dennis Kooker—the person "at the highest rung" with formal termination authority. (Tr. (7/29) 303:23–24; 321:23–24.) A designee cannot adequately testify on course of dealing without consulting the decision-makers whose conduct established it.

***Evasive and Incomplete Responses.*** An evasive or incomplete answer "is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Under Rule 37(a)(3)(B)(i), a party may move to compel when "a deponent fails to answer a question asked under Rule 30." Blumberg's testimony was

riddled with such responses on Topics 26 and 27. Asked whether Sony terminated other licensees for late payment—squarely within Topic 26(e)—he answered that Kooker "would know." (Tr. (6/18) 203:6–204:9.) Asked how much Slacker had paid Sony since 2007, he could not say. (Tr. (6/18) 258:3–7.) Asked for the payment breakdown between Sony and The Orchard, he could not provide it. (Tr. (6/18) 189:19–24.) These repeated deflections are precisely what Rule 37(a)(4) treats as failures to respond. *See Eid v. Koninklijke Luchtvaart Maatschappij N.V.*, 310 F.R.D. 226, 228 (S.D.N.Y. 2015) (Rule 30(b)(6) deponent must answer "fully, completely, [and] unevasively").

## **III. Sony's Counsel Improperly Instructed the Witness Not to Answer**

When defense counsel asked whether Sony applied the same "normal grace period" to other digital streaming licensees and asked about Sony's treatment of other digital streaming licensees—questions squarely within Topic 26(e)—Sony's counsel repeatedly objected and instructed the witness not to answer. (Tr. (7/29) 307:17–308:6, 344:4-14.)

Under Rule 30(c)(2), an instruction not to answer is permissible *only* "to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). None of these exceptions applies. Sony's counsel did not invoke privilege, identify an applicable court-ordered limitation, or seek contemporaneous relief under Rule 30(d)(3). The instructions were improper unilateral scope objections. Topic 26(e) expressly covers Sony's "treatment of other digital streaming service licensees upon termination," and the July 2 Order directed Sony to prepare its witness on "its complete (or substantially all of its) course of dealing . . . as described by topics 26 and 27."

Sony may argue that the July 2 Order only required testimony about Sony's relationship with Defendants. This reading cannot be squared with the plain language of the Order. The July 2 Order directed Sony to prepare a witness on its course of dealing "as described by topics 26 and 27." (July 2 Order.) Topic 26(e) expressly covers Sony's "treatment of *other digital streaming service licensees* upon termination." (Defs.' Notice of Dep. of Sony, Schedule A, Topic 26(e) (ECF No. 97-1)) Topic 26(e) is a subpart of Topic 26, which addresses Sony's "complete course of dealing" with Slacker. Reading 26(e) in isolation to exclude comparative treatment during the contractual relationship would undermine the scope of the Court's July 2 Order.[2] If the Court intended to limit testimony to Sony's relationship with Defendants, the reference to "other digital streaming service licensees" would be surplusage. Moreover, Sony's treatment of similarly situated licensees – whether it granted forbearance, accepted late payments, or negotiated extensions, amendments, payment plans and reinstatements rather than enforcing contractual deadlines and terminating – is directly probative of Defendants' waiver and estoppel defenses, which are expressly covered by Topic 27. If Sony routinely extended similar accommodations to other licensees in similar circumstances—including providing cure opportunities, deferring payment obligations, or negotiating amendments in lieu of termination—such evidence would establish that Defendants reasonably relied on Sony's pattern and practice when late payments occurred. Conversely, if Sony treated Slacker more harshly than comparable licensees facing similar payment defaults, that differential treatment would be relevant to Defendants' unclean hands defense.

---

[2] Sony may also argue that Topic 26(e)'s reference to treatment "upon termination" limits the inquiry to how Sony treated other licensees at the precise moment their contracts ended. This reading is equally untenable. The phrase "upon termination" encompasses the conduct, negotiations, forbearance, and course of dealing that led to—or avoided—termination. How Sony treated other licensees facing late payments, cure periods, and potential breaches is directly relevant to understanding course of dealing as it relates to Sony's "treatment . . . upon termination."

(*Id.* ¶ 8th Aff. Def.) Because evidence of Sony's treatment of similarly situated licensees bears directly on whether Sony's conduct created a reasonable expectation of forbearance based on Sony's established pattern and practice—and whether Defendants justifiably relied on that expectation—such evidence is essential to the proper adjudication of the waiver and estoppel defenses.

Sony may argue that the Court's June 10 Order (ECF No. 88) forecloses discovery into Sony's treatment of other licensees. That argument fails for three reasons. First, the June 10 Order addressed RFP 38—which sought documents concerning Sony's course of dealing *with Defendants*—not Topic 26(e), which expressly covers "treatment of other digital streaming service licensees upon termination." Second, the Court's July 2 Order—not the June 10 Order—addressed the 30(b)(6) deposition topics, and the July 2 Order expressly incorporated Topics 26 and 27 "as described by" those topics without exception or limitation. Third, the June 10 Order supports Defendants' position: the Court rejected Sony's relevance and proportionality objections and ordered production of course-of-dealing documents. Sony cannot now claim that testimony on all related topics is irrelevant when the Court has already ruled that document discovery on course of dealing is proper.

## IV. Sanctions Are Warranted

Sanctions are warranted under multiple provisions. Sony failed to obey the July 2 Order by redesignating Blumberg without preparing him on the 2007–2018 period, warranting sanctions under Rule 37(b)(2)(A) (establishing facts or precluding claims) and mandatory expense-shifting under Rule 37(b)(2)(C). Sony's counsel's improper instructions not to answer and Blumberg's evasive responses constitute failures to respond under Rules 37(a)(3)(B)(i) and 37(a)(4), entitling Defendants to compel answers. The instructions and inadequate preparation also impeded fair examination, requiring additional deposition time under Rule 30(d)(1) and justifying sanctions under Rule 30(d)(2). Finally, Rule 37(a)(5)(A) mandates that when a motion to compel is granted, the Court "must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Neither exception applies—Sony's decision to redesignate the same inadequately prepared witness and its counsel's instructions not to answer are not "substantially justified."

## V. Relief Requested

Defendants respectfully request that the Court: (1) compel Sony to produce a properly prepared Rule 30(b)(6) witness(es)—having consulted Stapleton (2007–2012), Cole, Kooker, Carfora, and Smith—on the outstanding aspects of Topics 26 and 27, including the complete 2007–2018 course of dealing and Topic 26(e), providing sufficient time to complete the examination; (2) overrule Sony's objections and instruction not to answer and compel Sony 30(b)(6) testimony on Topic 26(e); (3) award Defendants their reasonable expenses associated with this motion, including attorneys' fees, under Rules 30(d)(2), 37(a)(5)(A), and 37(b)(2)(C), and order Sony to pay all fees and costs associated with any additional deposition testimony; and (4) order that an adverse-inference instruction, preclusion of evidence, or other appropriate sanction under Rule 37(b)(2)(A) will be imposed at trial if Sony fails to comply with the Court's order.

Respectfully submitted,

*/s/ Scott Michael Lupiani*

Scott Michael Lupiani, Esq.
Irene Oria, Esq.
Counsel for Defendants
**Admitted Pro Hac Vice*

cc: All counsel of record

**Denied for substantially the reasons stated in plaintiff's letter in opposition (Dkt 166).**

SO ORDERED

/s/ Lewis A. Kaplan
Lewis A. Kaplan, USDJ

Dated: August 28, 2026